# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
October 5, 2006 Session

## STATE OF TENNESSEE v. ROBERTO VASQUES, KEVIN JOEL HERNANDEZ, LUIS MARTIN VASQUEZ, HECTOR ALONZO, AND VICTOR HUGO GARZA

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Davidson County**
**No. 2000-D-1876     J. Randall Wyatt, Jr., Judge**

---

**No. M2004-00166-SC-R11-CD - Filed on March 9, 2007**

---

JANICE M. HOLDER, J., concurring and dissenting.

I respectfully dissent from the majority's conclusion that Vasquez and Garza are entitled to coram nobis relief. In my view, the impeachment evidence in this case does not merit coram nobis relief as to any of the defendants.

I agree with the majority that the newly discovered impeachment evidence, if presented, may have had some effect upon the weight the jury gave to Agent Howell's testimony. I disagree, however, that the impeachment evidence warrants a new trial. The evidence was sufficient to support the conviction of each defendant without Agent Howell's testimony. Agent Howell testified that he was assisting in surveillance with regard to the activities at the car wash on Nolensville Road. He was positioned so that he could see the parking lots of the Dairy Queen and Burger King. He heard on the radio that a Firebird was approaching along with the other cars. He observed the Firebird in the back of the Dairy Queen parking lot and saw two occupants in the car. He watched the car eventually pull into the Burger King parking lot and back into a spot that faced the car wash. He testified that he was able to identify the occupants of the Firebird because he ran up to the vehicle during the "take down." He added that since Detective Taylor and Officer Kajihara had the situation under control, he ran toward the car wash.

Officer Kajihara, who observed Vasquez and Garza while a passenger in the same vehicle as Agent Howell, gave testimony substantially similar to that of Agent Howell. Officer Kajihara testified that he was sitting in a car with Agent Howell between the Dairy Queen and the Burger King conducting surveillance and that he saw the Firebird pull into the Burger King parking lot and stop in a space that faced the car wash. He observed two people in the vehicle. Officer Kajihara saw the driver clearly, but he did not see the passenger clearly until the "take down." He approached the car after Detective Taylor pulled up behind the Firebird to "box it in."

Other officers gave testimony implicating Vasquez and Garza in the conspiracy as well. Detective Birchwell testified that he saw the Firebird following the Taurus and the Camry down Nolensville Road and that he observed the Firebird stop in front of the car wash before pulling into the Dairy Queen parking lot. He later saw the Firebird in the Burger King parking lot. He saw two people in the Firebird but could not identify them at that point. Detective Clark testified that he observed the black Firebird at 1035 Antioch Pike. He also observed the Firebird following the Taurus headed toward Walgreens where those vehicles met the Camry. He witnessed the Firebird and Taurus pass several schools. Detective Donnegan testified that he saw the Firebird behind the Camry and the Taurus on Nolensville Road. He later saw the Firebird in the Burger King parking lot, facing the car wash. Detective Rollins testified that he followed the Taurus from 1147 Antioch Pike to 1035 Antioch Pike. A few seconds after the Taurus arrived at 1035 Antioch Pike, Detective Rollins saw a black Firebird in which were two male Hispanics pull up to the same address. The Taurus and Firebird left simultaneously, and Detective Rollins followed them to Walgreens where those vehicles met the Camry. He observed all three vehicles leave the Walgreens' parking lot at the same time and travel toward the car wash. Detective Adams testified that he saw a black Firebird in the Dairy Queen parking lot. The Firebird pulled into a space next to his vehicle, facing the car wash. He observed the occupants of the Firebird, two male Hispanics whom he admitted he could not identify, watching the car wash. Detective Taylor testified that he was advised by radio that the Firebird was positioned in the Burger King parking lot. Detective Taylor waited for the signal to make the arrest and pulled in behind the Firebird. He testified that Officer Kajihara helped get Vasquez out of the car, and then he sent Officer Kajihara to assist other officers at the car wash. Detective Taylor identified the vehicle's occupants as Garza, the driver, and Vasquez, the passenger.

The defense postulates that the jury might have questioned the integrity of the entire investigation and acquitted all of the defendants had the impeachment evidence relating to Agent Howell been available at trial. As the majority points out, however, Agent Howell was only one of approximately fifteen Tennessee Bureau of Investigation agents and Metropolitan police officers involved in this operation. Viewed in the context of the entire trial, Agent Howell's testimony was of little consequence, especially since the content of his testimony was nearly identical to that of Officer Kajihara, who was a passenger in Agent Howell's vehicle. I therefore disagree that the impeachment evidence at issue in the present case meets the "may have resulted in a different judgment" standard. In my view, no reasonable basis exists for concluding that had the impeachment evidence been presented at trial the result of the proceedings may have been different. Accordingly, I would reverse the Court of Criminal Appeals' holding that Vasquez and Garza are entitled to coram nobis relief.

_____
JANICE M. HOLDER, JUSTICE